

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00103-CV

IN THE MATTER OF THE MARRIAGE OF
EUGENE HOWELL SAULS AND JOSEPHINE MARIE WORLEY

On Appeal from the 296th District Court
Collin County, Texas
Trial Court No. 296-52296-2020

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

OPINION

Josephine Marie Worley appeals from a final decree of divorce from her former spouse, Eugene Howell Sauls.[1] The trial court divided the marital estate in accordance with premarital and post-marital agreements signed by Worley and Sauls. On appeal, Worley raises seven points of error, including that the trial court erred by finding the premarital and post-marital agreements valid.

We find that the trial court properly found that the premarital and post-marital agreements were valid. We further find that Worley either waived or failed to preserve her remaining complaints. As a result, we affirm the trial court's judgment.

I.      Factual Background

Sauls and Worley, an elderly couple, were married on May 2, 2015. On April 30, 2015, a few days before the marriage, they executed a premarital agreement. *See* TEX. FAM. CODE ANN. § 4.001. Each page of the premarital agreement was initialed by both Sauls and Worley, and it is undisputed that they both signed the premarital agreement before a notary public. The premarital agreement listed the separate property assets of both parties and contained an agreement that they would remain each party's separate property after the marriage. It also contained agreements "with respect to . . . the disposition of property on separation." TEX. FAM. CODE ANN. § 4.003(a)(3). After the marriage, on June 26, 2015, Sauls and Worley entered into a post-marital agreement, which they both signed.

---

[1] Originally appealed to the Fifth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Fifth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

The premarital and post-marital agreements both contained the following provisions:

- "[T]he Parties intend that there shall never be any community property."

- "The Parties hereto each agree that each of the properties listed on Exhibit 'A' hereto, together with the income earned therefrom and all mutations thereof, shall forever remain [Sauls]'s separate property, and except for gifts or transfers . . . , [Worley] shall never have any ownership or other interest of any kind or nature therein."

- The Parties each agree that "each of [the] properties, together with the income earned therefrom and all mutations thereof, shall forever remain [Sauls]'s separate property, and except for gifts or transfers . . . , [Worley] shall never have any ownership or other interest of any kind or nature therein."

- "[Worley] agrees that all properties standing in [Sauls]'s name, now or during the marriage, shall be presumed to be his separate property."

- "Properties purchased from the proceeds of sale of such separate properties shall remain separate properties."

- "As [Sauls]'s separate property he shall retain all present and future retirement funds and benefits of any nature, wherever and by whomever held by or for him. [Worley] agrees that all of such present and future retirement funds and benefits shall be free from any claim from her, and that [Sauls] may designate the beneficiary or beneficiaries of such retirement funds who are to receive same at his death without designating [Worley] as such beneficiary."

The agreements also contained similar provisions with respect to Worley's separate property, provided they were signed voluntarily, and stated that the agreements were binding and "contain[ed] the entire agreement between the Parties."

Sauls filed a petition for divorce from Worley, described at trial the difficulties in the marriage, and testified that it had become insupportable and that there was no reasonable expectation of reconciliation with Worley. The premarital and post-martial agreements were admitted into evidence without objection. Sauls testified that Worley knew that he would require

3

a premarital agreement for several months before the marriage and said he delivered it to Worley four to six weeks before the wedding to give her ample time to review it. Sauls testified that it was their intent to avoid accumulation of community property. There was no objection at trial to Saul's proposed property division, which was admitted into evidence. The proposed division awarded Sauls his retirement benefits, which he testified were earned before the marriage, and a home purchased by him during the marriage with proceeds from the sale of another home that was undisputedly his separate property. Sauls introduced records from the appraisal district showing that only he was listed as the owner of the new home and asked the trial court to order Worley to vacate the property.

At trial, Worley testified that she did not have the premarital agreement until two days before the wedding and claimed that she was under duress to sign it because wedding preparations had already been made. Worley also testified that she believed the premarital agreement was one-sided and unconscionable. The premarital agreement contained a certification, signed by attorney M. Lane Lowery on May 15, which represented that Worley had consulted with counsel on the premarital agreement and that counsel explained its terms and concluded that Worley understood and voluntarily executed the premarital agreement. At trial, Lowery testified that Worley gave him the premarital agreement a few days before the marriage and had a conversation with her about it but did not agree to represent her. Lowery said he did not believe that there was anything wrong with his certification.

After hearing the evidence, the trial court granted the divorce, found the premarital and post-marital agreements valid, awarded each party their separate property, and concluded that

4

there was no community property to divide. The trial court also ordered Worley to vacate the new home owned by Sauls.

## II. Worley Has Waived Her First and Second Points of Error

It is well established that, to present an issue to this Court, a party's brief shall, among other things, "state concisely and without argument the facts pertinent to the issues or points presented . . . [with] support[] by record references," TEX. R. APP. P. 38.1(g), and must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record," TEX. R. APP. P. 38.1(i). As a result, "[b]are assertions of error, without argument or authority, waive error." *Washington v. Bank of New York*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). "When a party fails to adequately brief a complaint, [s]he waives the issue on appeal." *Id.* at 854–55.

In her first point, Worley argues the trial court erred "by not fully addressing the lack of insupportability that [Worley], who was without Counsel [at trial], affirmed in a Motion to the Court prior to the Final Decree of Divorce and during the Trial itself."[2] She further argues, "The Trial Court should have evoked its equitable powers and Ordered both parties to attend Family Counseling, which was pleaded for by [Worley] over the many years of the marriage, with an appointed Credentialed Counsellor." In her second point of error, Worley argues that the trial court erred in ordering her to vacate Sauls's home.

---

[2]Worley is represented by counsel on appeal. The opening brief does not challenge the legal or factual sufficiency of the evidence supporting the trial court's finding of insupportability. Even if the brief can somehow be interpreted to raise such a challenge, Sauls's testimony was sufficient to support the trial court's finding.

Worley's statement of facts, which is contained under the headings outlining the first and second points of error, is argumentative and fails to contain appropriate record references. Worley also fails to provide a concise, nonconclusory argument in support of her first point of error and does not include relevant citations to supporting authority. With respect to her second point of error, Worley does not challenge the trial court's finding that the new home was Sauls's separate property and fails to cite any authority in support of her claim that the trial court's order to vacate the property was unconscionable. The briefing on the second point of error also relies on facts that were not in evidence.

"Only when we are provided with proper briefing may we discharge our responsibility to review the appeal and make a decision that disposes of the appeal one way or the other." *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.). "[W]e are not responsible for doing the legal research that might support a party's contentions." *Id.* "Were we to do so . . . we would be abandoning our role as judges and become an advocate for that party." *Id.*

We conclude that Worley's inadequate briefing on her first and second points of error presents nothing for our review. *See Jones v. Hous. Auth. of the City of Dallas, Tex. Park Manor*, No. 05-19-00841-CV, 2020 WL 3118615, at *1 (Tex. App.—Dallas June 12, 2020, no pet.) (mem. op.) (citing *Bolling*, 315 S.W.3d at 895). As a result, we overrule her first and second points of error.

**III.    The Trial Court Properly Found the Premarital and Post-Marital Agreements Valid**

In her third point of error, Worley argues that the premarital agreement had "possible fraud issues" because Lowry signed the certification after the marriage. [3] Even so, the only formality required by the Texas Family Code for a premarital agreement is that it "must be in writing and signed by both parties." TEX. FAM. CODE ANN. § 4.002. As a result, the advice of counsel is not a prerequisite to the validity of a premarital agreement. *See id.*

"Texas law generally favors premarital agreements." *Larson v. Prigoff*, No. 05-99-01755-CV, 2001 WL 13352, at *1 (Tex. App.—Dallas Jan. 8, 2001, no pet.) (mem. op.) (citing *Beck v. Beck*, 814 S.W.2d 745, 749 (Tex. 1991) ("public policy dictates that premarital agreements should be enforced"); *Grossman v. Grossman*, 799 S.W.2d 511, 513 (Tex. App.—Corpus Christi 1990, no writ) ("premarital agreements are presumptively valid")). "A premarital agreement becomes effective on marriage." TEX. FAM. CODE ANN. § 4.004. "After marriage, a premarital agreement may be amended or revoked only by a written agreement signed by the

---

[3]Among other things, the trial court awarded Worley the "master bedroom set, guest bedroom set, armoire in husband's bedroom, bedside tables in husband's bedroom, all stuffed chairs, repainted dining room set in breakfast nook, all furniture in office." Worley raises a multifarious complaint on appeal that she "brought to the first marital home all outdoor furniture, several bookcases, all lamps, pictures, wall coverings, and office furniture." Worley raised no objection to the proposed property division at trial and introduced no evidence with respect to those items. Now, Worley alleges that the premarital and post-marital agreements were deficient and void because they failed to list all the items that she had brought to the marriage. However, Worley relies on evidence outside of the appellate record and does not cite to any authority to support her proposition, and "we cannot consider . . . documents that are not properly included in the appellate record or before this Court." *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied). We find this issue inadequately briefed.

parties. The amended agreement or the revocation is enforceable without consideration." TEX. FAM. CODE ANN. § 4.005.[4]

Here, it is undisputed that the written premarital agreement was signed by Worley and Sauls. Also, it is undisputed that the post-marital agreement was also signed by the parties and incorporated the complained-of terms from the premarital agreement. Because all the formalities of a premarital agreement were met, the trial court properly found the premarital and post-marital agreements valid. We overrule Worley's third point of error.

---

[4]Worley also complains that the premarital agreement was one-sided and unconscionable. Yet, "unconscionability alone is insufficient to render a premarital agreement unenforceable under the family code." *Larson*, 2001 WL 13352, at *3. Section 4.006 of the Texas Family Code states:

> (a) A premarital agreement is not enforceable if the party against whom enforcement is requested proves that:
> > (1) the party did not sign the agreement voluntarily; or
> > (2) the agreement was unconscionable when it was signed and, before signing the agreement, that party:
> > > (A) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
> > > (B) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
> > > (C) did not have, or reasonably could not have had, adequate knowledge of the property or financial obligations of the other party.
> (b) An issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law.

TEX. FAM. CODE ANN. § 4.006. "Section 4.006 of the family code provides that unconscionability is only a starting point in the analysis." *Larson*, 2001 WL 13352, at *3. "Even if a premarital agreement is unconscionable, the party challenging the agreement must also demonstrate she has satisfied each of the three conditions set forth in 4.006(a)(2), regarding disclosure of the future spouse's financial condition." *Id.* Worley's brief does not properly challenge the trial court's implied finding that she failed to present sufficient evidence to meet her burden under Section 4.006(a)(2). Instead, in her reply brief, Worley acknowledges that she did not discharge her burden of proof to show that the agreements were unconscionable or signed involuntarily. Even so, she argues that Lowery was not provided with the information listed in Section 4.006(a)(2). It was Worley, not Lowery, who was required to be presented with this information, and the brief fails to argue that she did not have it.

## V.      Worley Failed to Preserve Her Remaining Points of Error

In her remaining points, Worley argues that the trial court erred (1) by not holding a hearing on her "[m]otion to request [Sauls's] humanitarian need to pay for [her] legal fees," (2) "in failing to address the important and needed subject dealing with <u>Income Tax Refunds from the IRS</u>,"[5] (3) "by not addressing [Worley]'s Liability in the Current Marital Home Located at 5434 Travis Drive, Frisco, Texas,"[6] and (4) "in not addressing a major inaccuracy of both the Pre-Marital and Post-Marital Agreements."  Sauls argues that Worley has failed to preserve these complaints, and we agree.

"As a prerequisite to presenting a complaint for appellate review, the record must show that" it "was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling . . . with sufficient specificity to make the trial court aware of the complaint" and that either the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal."  TEX. R. APP. P. 33.1(a).

At trial, the court found that Worley had never presented her motion asking for Sauls to pay for legal fees for an attorney of her choosing.  As a result, after noting that this was Worley's "third or fourth trial date," the trial court overruled Worley's motion as untimely.  Worley does not argue that the motion was timely presented.  Instead, she complains that the trial court should have appointed her counsel, but she fails to demonstrate that she was entitled to court-appointed

---

[5]There was no evidence at trial that Worley or Sauls had received any income tax refunds during the marriage.

[6]Worley's pleadings made no claim requiring the trial court to address any alleged liability in Sauls's home, which he testified was purchased with separate property funds.

9

counsel. *See Baca v. Baca*, No. 11-15-00147-CV, 2016 WL 4574473, at *1 (Tex. App.—Eastland Aug. 25, 2016, no pet.) (mem. op.) (citing *Culver v. Culver*, 360 S.W.3d 526, 535 (Tex. App.—Texarkana 2011, no pet.) ("The doctrine of ineffective assistance of counsel does not apply to civil cases where there is no constitutional or statutory right to counsel." (footnote omitted))).

As for her remaining issues, Worley did not present the proper pleadings, objections, or motions raising the complaints she now makes on appeal. As a result, "[s]he has not preserved th[ese] issue[s] for appellate review." *DeGroot v. DeGroot*, 369 S.W.3d 918, 924–25 (Tex. App.—Dallas 2012, no pet.) (citing TEX. R. APP. P. 33.1(a); *In re W.M.O'C*, No. 04-03-00038-CV, 2004 WL 839629, at *2 (Tex. App.—San Antonio Apr. 21, 2004, no pet.) (mem. op.) ("husband failed to preserve complaint that trial court's order divested him of his separate property by failing to raise it in trial court"); *In re Marriage of Royal*, 107 S.W.3d 846, 852 (Tex. App.—Amarillo 2003, no pet.) ("same")).

We overrule Worley's remaining points of error because they are unpreserved.

## VI.    Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     June 7, 2021
Date Decided:       November 18, 2021

10